UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

KENNETH J. HORNAK
and JUDY L. HORNAK,

        Debtors.
_____/

Case No. 07-22881-dob
Chapter 13 Proceeding
Hon. Daniel S. Opperman

## OPINION REGARDING DEBTORS' POST-CONFIRMATION CHAPTER 13 PLAN MODIFICATION

### INTRODUCTION

Pending before the Court is Debtors' Post-Confirmation Chapter 13 Plan Modification. The Debtors have amended their schedules to list previously undisclosed interests in real property and now wish to modify both the length of the plan and the total payment to unsecured creditors. After resolving certain standing issues, the remaining issue is whether the state probate court had the requisite jurisdiction and properly applied the judicial estoppel doctrine to set aside the deeds conveying the property interests to Debtor Kenneth Hornak, as a married man.

Debtors argue that the real estate was property of the estate, thus the probate court was without jurisdiction, and in fact violated the automatic stay by continuing the state proceedings. Debtors further argue that the probate court improperly applied judicial estoppel because this Court did not adopt any position with regard to the real property and, thus, they could not take an inconsistent position

Objecting to the plan modification is the personal representative ("PR") of Debtor Kenneth Hornak's mother's estate. The PR argues the probate court had jurisdiction and properly applied judicial estoppel because Debtors failed to list an interest in the real property on the original

-1-

schedules and this Court's Order Confirming Plan ("OCP") adopted their position of no interest in the property.

### FINDINGS OF FACT

Debtor Kenneth Hornak's mother, Vivian Hornak, purportedly executed two quitclaim deeds transferring her interest in real property to Kenneth Hornak in July of 2000. The deeds were notarized but not recorded. Just prior to this transfer, Vivian Hornak executed a new will in June of 2000. She later executed another will in September of 2000. On August 23, 2004, Vivian Hornak executed two quitclaim deeds transferring her interest to herself and Kenneth Hornak in the following manner: "Vivian G. Hornak and Kenneth J. Hornak with the right of sole survivorship" and the handwritten word "married" above Kenneth Hornak's name. Again, these deeds were notarized but not recorded. Debtors filed their petition on October 31, 2007. The Debtors' interest in these properties was not listed in their schedules. Debtors' plan proposed 37 plan payments ending January, 2011. Further, the plan stated: "Upon confirmation of the Plan, all property of the estate shall vest in the Debtor(s), except for the future earnings of the Debtor(s), and other property specifically devoted to the Plan." The Plan was confirmed without alteration on December 21, 2007.

Vivian Hornak passed away on April 30, 2010. Kenneth Hornak recorded the 2004 deeds with the Saginaw County Register of Deeds Office on May 7, 2010. Vivian Hornak's probate estate was opened the same day. Ronald Hornak, Vivian Hornak's only other surviving child, filed a petition in probate court seeking to set aside the deeds. The probate court permitted discovery on the issue. A hearing on the petition was held on October 19, 2010. At some point in October or November of 2010, both Debtors' counsel and counsel for Ronald Hornak spoke to the Chapter 13 Trustee. The Chapter 13 Trustee filed a notice of interest with the Saginaw County Register of

Deeds. On November 23, 2010, around 10:30 a.m. Debtors filed their amended schedules and post-confirmation amended plan. Debtors' counsel then filed notice of the amendments and plan modification with the probate court registrar. According to Debtors, and undisputed by the PR, roughly at 2:45 p.m. on November 23, 2010, the probate court filed it opinion setting aside the 2004 conveyances based on judicial estoppel grounds.

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), confirmations of plans.

## APPLICABLE LAW

Section 541(a) states, in relevant part:

(a) The commencement of a case . . . creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

> (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case.

Section 1306 states:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title--

> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . .; and
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted . . . .

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

Section 1327(b) states:

> (a) The provisions of a confirmed plan bind the debtor . . . .
> (b) Except as otherwise provided in the plan or the order confirming the plan, the

-3-

confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

ANALYSIS

Debtors argue, without opposition, that the properties deeded to Kenneth Hornak in 2004 came into their bankruptcy estate as of the petition date. 11 U.S.C. § 1306 expressly states that a Chapter 13 estate includes 11 U.S.C. § 541 property, which includes "all legal . . . interests of the debtor in property as of the commencement of the case." Leaving aside any debate regarding the validity of those conveyances, as of the petition date Debtors held a legal interest in the properties by virtue of the conveyances to Kenneth Hornak, as a married man, granting a joint tenancy with survivorship rights. *Albro v. Allen*, 454 N.W.2d 85 (Mich. 1990), 434 Mich. 271, 454 N.W.2d 85 (1990). Therefore, even though Debtors did not schedule the assets, for whatever reason, they nonetheless became part of their bankruptcy estate. *See In re Kane*, 628 F.3d 631, 641 (3d Cir. 2010) ("where a debtor . . . fails to schedule [an asset], the asset remains the property of the bankruptcy estate"); *In re Coastline Care, Inc.*, 299 B.R. 373, 377 (Bankr. E.D.N.C. 2003) ("Property of the estate encompasses property that is not scheduled or otherwise disclosed by the debtor."). The PR does not appear to contest that as of the date of the petition the properties were in Debtors' bankruptcy estate.

The critical next point in time is confirmation. Pursuant to 11 U.S.C. § 1327(a) and (b), the OCP binds Debtors and, "**[e]xcept as otherwise provided** in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." (emphasis added). Debtors' confirmed plan expressly states, "**Upon confirmation of the Plan, all property of the estate shall vest in the Debtor(s)**, except for the future earnings of the Debtor(s), and other

property specifically devoted to the Plan." Debtors assert, without supporting authority, that at confirmation Section 1327(b) only "re-vests . . . property listed in their schedules" and "therefore, **unlisted assets remain property of the debtors' estate under § 1306**." (emphasis added). Debtors further assert that the Chapter 13 Trustee owns or controls assets not re-vested under Section 1327(b) – "trustee controlled the assets that were involved in probate litigation because they never reverted back to the Hornaks." The Debtors are incorrect as to the effect of confirmation on pre-petition property of the estate (or property acquired between the petition date and confirmation). There is a significant body of law existing as to what happens to a Chapter 13 bankruptcy estate upon confirmation. *See, e.g.*, *In re Powers*, 435 B.R. 385, 387-89 (Bankr. N.D. Tex. 2010) (summarizing the five different approaches to what happens property of the estate under Section 1327(b) at confirmation). One often cited case discusses three of the main approaches: (1) estate termination (at confirmation, pursuant to Section 1327(b), all property vests in a debtor and the estate ceases to exist); (2) estate transformation (post-confirmation, all property essential to the plan remains in the estate and all other property vests in debtor); and (3) estate preservation (declining to divide pre- and post-confirmation property, at least with respect to post-petition property and property committed to the plan). *Annese v. Kolenda (In re Kolenda)*, 212 B.R. 851, 853-55 (W.D. Mich. 1997). More recently, other courts have added a "reconciliation" approach whereby "property that exists at confirmation vests in the debtor under Section 1327, but property acquired after confirmation funds the chapter 13 estate, which continues to exist post-confirmation." *Powers*, 435 B.R. at 388 (also noting "this approach has been adopted by most courts," including by the "First, Eighth, and Eleventh Circuits"); *see also In re Dagen*, 386 B.R. 777, 782 (Bankr. D. Colo. 2008) (referring to this as "the 'modified estate preservation approach'"). Lastly, a district court in Texas

-5-

found all four approaches lacking and formalized a fifth approach that focuses on the term "vests" in Section 1327(b) and stresses that post-confirmation the debtor's interest is "an immediate and fixed right to the property held by the estate, but the debtor does not enjoy this right until he has faithfully completed" the plan. *Powers*, 435 B.R. at 389 (citing and discussing *Woodward v. Taco Bueno Restaurants, Inc.*, No. 4:05-CV-804-Y, 2006 WL 3542693, at *9 (N.D. Tex. Dec. 8, 2006)).[1]

However, as one court has noted, most of the cases in this area deal with post-confirmation assets acquired by a debtor or the "post-petition income stream of the debtor under § 1306(b) rather than with the property in which the debtor had an interest at the inception of the case." *Yoon v. Krick (In re Krick)*, 373 B.R. 593, 601 (Bankr. N.D. Ind. 2007). The *Kolenda* court acknowledged this fact as well. "Section 1327(b) appears to address the vesting of property that is in the estate *at the time of confirmation*." *Kolenda*, 212 B.R. at 855 (citations omitted; emphasis in original); *see also In re Jackson*, 403 B.R. 95, 100 (Bankr. D. Idaho 2009) ("[T]he Court holds that, under § 1327(b), a provision in a confirmed plan that property 'revest' in the debtor applies solely to property in existence at the time of confirmation."). Thus, where, as here, an asset is "property of the estate" by virtue of Sections 541 and 1306(a), whether it remains in the estate depends on the debtor's plan.

Section 1327(b) provides that "[e]xcept as otherwise provided in the plan or order confirming plan, the confirmation of a plan vests all of the property of the estate in the debtor." Here, Debtors' plan expressly vested property of the estate back to the Debtors at confirmation. The Court's Order

---

[1] Bankruptcy Judge Lundin, a recognized Chapter 13 authority, has analyzed the four approaches and finds it "reasonable to conclude" that pursuant to 11 U.S.C. § 1327(b), "property of the Chapter 13 estate moves out of the estate and into the possession and control of the debtor upon confirmation of a plan." Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4th ED., § 230.1, at ¶ 2 (Sec. Rev. June 15, 2004) (online version).

Confirming Plan did not alter that vesting. The properties conveyed by the 2004 deeds therefore ceased to be "property of the estate" at confirmation and became Debtors' property once again. This is true even though Debtors' failed to schedule the properties. *See In re Henneghan*, 2009 WL 2855835, at *1 (Bankr. D. Col. June 15, 2009) ("Section 1327(b) does not distinguish between property of the estate that was scheduled versus estate property that was not scheduled. Unless the plan or the confirmation order provides otherwise, the property of the estate vesting in a debtor pursuant to § 1327(b) **includes unscheduled property**.")(*emphasis added*). Several persuasive cases support this finding that the properties at issue here were no longer property of the estate post-confirmation.

In *City of Chicago v. Fisher* (*In re Fisher*), 203 B.R. 958 (N.D. Ill. 1997), the district court reversed the bankruptcy court's decision that the city violated the stay by destroying the debtor's car owned at the petition date for post-petition parking violations. In doing so, the district court acknowledged the debate over the apparent conflict between 11 U.S.C. §1306(a) and § 1327(b), adopted what is now termed the "reconciliation" or "modified estate preservation" approach, and held that the debtor's "car was property of the estate at the time of the plan's confirmation, but under § 1327(b) [the car] vested in her when the plan was confirmed" because "the plan did not provide otherwise." *Id*. at 963-64. Thus, the city did not violate the stay because "the car was no longer property of the estate protected by § 362(a)(3)." *Id*. at 964.

A more factually similar, although procedurally different, case is found in *In re Krick*, where the property at issue was a home owned pre-petition by the Chapter 13 co-debtor wife and her parents as joint tenants. The debtors' properly scheduled the home, and their plan expressly re-vested property in the debtors at confirmation. *In re Krick*, 373 B.R. at 595-96. Post-confirmation,

-7-

the wife and her parents transferred the home back to solely her parents via quitclaim deed, and then during the debtors' divorce proceedings a state court found that this conveyance removed the home from the marital estate. The debtors subsequently severed their bankruptcy case and Ms. Krick moved to convert her Chapter 13 case to a Chapter 7. It was at this point that the Chapter 7 trustee initiated the adversary proceeding to sell the home under 11 U.S.C. § 363(h), and the question of Ms. Krick's interest in the property became an issue. *Id*. at 596-98. That court noted all the various approaches and "agree[d]" with the "estate termination" approach "with respect to § 541 property on the date of the filing of the Chapter 13 case[.]" *Id*. at 600-01 (further noting that this was the same result "with respect to § 541 property on the date of the filing of the Chapter 13 case" under the "reconciliation" approach). After pointing out that few of the cases dealing with the interplay of Sections 1306 and 1327 "address 'vesting' in the context of § 541 pre-petition property," the court concurred with the result reached in *Fisher*, *supra*. *Id.* at 601-02. The *Krick* Court ultimately held that "upon confirmation of her Chapter 13 plan, *whatever interest* Ms. Krick had in the subject real estate re-vested in her and no longer constituted property of her bankruptcy estate." *Id*. at 606 (emphasis in original). "The concept of re-vesting returns *all* control of at least all pre-petition § 541 property to the debtor as of the effective date of the confirmation of the plan." *Id*. at 607 (emphasis in original). "The simple bottom-line legal determination is that upon confirmation of [the debtor wife's] Chapter 13 plan, she was free to deal with the subject real estate," and the property was not part of the Chapter 7 estate. *Id.* at 608.

A similar result was reached in *In re Van Stelle*, 354 B.R. 157 (Bankr. W.D. Mich. 2006), where the property at issue was insurance proceeds from the debtors' car, owned pre-petition and listed in the schedules, that was totaled post-petition but pre-confirmation. *Id*. at 159-60. The

debtors did not amend their schedules prior to confirmation and the actual check was tendered post-confirmation. *Id*. at 160. While the legal issue was whether the debtors could force the secured creditor to accept substitute collateral post-confirmation, the court also addressed "the preliminary question of whether the insurance proceeds even remained as property of the estate when the [d]ebtors' plan was confirmed." *Id*. at 161, 163. The debtors' plan in that case also re-vested all "property of the estate" to the debtors, so the *Van Stelle* Court looked at the debate over the apparent tension between Sections 1306 and 1327. The *Van Stelle* Court distinguished *Kolenda* because it "involved property that the debtor had acquired post-confirmation" as opposed to the pre-confirmation property interest at issue there. *Id.* at 164-65. The *Van Stelle* Court found that "[s]ection 1327(b) stands on the same footing as those other provisions of the Bankruptcy Code that establish how property of the estate, once acquired, is to be later released." *Id*. at 167. The *Van Stelle* Court then noted the re-vesting provision in Section 349(b)(3) (dismissal re-vests property of the estate to the debtor) and the stay exception in Section 362(b)(9) (tax assessment is excepted from stay where "property or its proceeds are . . . otherwise revested in[ ] the debtor") support the conclusion that Section 1327(b) effect the "absolute transfer of the bankruptcy estate's interest in property" to the debtor. *Id*. at 167-68. *Van Stelle* ultimately adopted the reasoning in *Fisher*, *supra*, and held that "property that had become property of the estate . . . by either operation of Section 541 or Section 1306 prior to confirmation will again become the debtor's property upon confirmation by operation of Section 1327(b) unless the plan or confirmation order provides otherwise." *Id*. at 172.

  Several other courts are substantially in agreement. *See*, *e.g.*, *In re Clouse*, 446 B.R. 690, 697-704 (Bankr. E.D. Pa. 2010) (no stay violation as to pre-confirmation assets transferred post-

-9-

07-22881-dob    Doc 89    Filed 09/27/11    Entered 09/27/11 09:58:09    Page 9 of 12

confirmation by the debtor to his spouse under postnuptial agreement because debtor's plan was silent as to vesting thus Section 1327(b) controlled and the pre-confirmation assets re-vested at confirmation and were not subject to automatic stay); *Fritz Fire Protection Co., Inc. v. Chang (In re Chang)*, 438 B.R. 77, 85 (Bankr. M.D. Pa. 2010) (debtor's interest in commercial property owned pre-petition re-vested at confirmation per the plan; thus, no violation of the automatic stay when plaintiff filed mechanics lien on property for work done to debtor's husband's restaurant on the property); *In re Wetzel*, 381 B.R. 247, 254 (Bankr. E.D. Wis. 2008) ("When the plan or order confirming the plan provides that the property of the estate revests in the debtor at confirmation, only those property interests existing at confirmation revest in the debtor."); *cf. Telfair v. First Union Mortg. Corp.,* 216 F.3d 1333, 1339-40 (11th Cir. 2000) (adopting "estate transformation" approach and finding no stay violation with respect to mortgage payments made directly to mortgagee because those payments were "were no longer property of the estate" after confirmation); *Henneghan*, at *1 (case re-opened for the limited purpose of permitting debtor to move to annul the automatic stay under Section 362(a)(3) to pursue unscheduled cause of action that re-vested in the debtor at discharge pursuant to the Order Confirming Plan, which "only delayed" the vesting under Section 1327(b)); *Paris v. Sansom*, No. 1:06-CV-98, 2007 WL 1345368, at *5 (E.D. Tenn. May 7, 2007) (Chapter 13 debtor could pursue post-discharge her unscheduled discrimination cause of action because the suit re-vested in debtor at completion of plan pursuant to the plan and Order Confirming Plan).

Applying the foregoing persuasive case law here, contrary to Debtors' argument, the conveyed properties did not remain "property of the estate" by operation of Section 1327(b), their plan, and the Order Confirming Plan. Section 541, via Section 1306(a), swept the unscheduled

properties into the bankruptcy estate. The PR does not dispute this. However, at confirmation, Section 1327(b) and the express terms of Section E of Debtors' plan, left unaltered by the Order Confirming Plan, re-vested the conveyed properties and effected the "absolute transfer" of the properties. At least one bankruptcy court has found that unscheduled property does in fact re-vest pursuant to Section1327(b), unless "otherwise provided in the plan or the order confirming the plan[.]" That court held:

> Accordingly, pursuant to the vesting rule of § 1327(b), as permissibly modified by the confirmation order, all of the property of the estate in existence at the time of confirmation vested in Henneghan upon the entry of the discharge order.
> Section 1327(b) does not distinguish between property of the estate that was scheduled versus estate property that was not scheduled. Unless the plan or the confirmation order provides otherwise, the property of the estate vesting in a debtor pursuant to § 1327(b) includes unscheduled property. Accordingly, the property of the estate that vested in Henneghan upon the entry of the discharge order included the unscheduled lender liability claim.

*Henneghan*, at *1.

Since the properties ceased to be "property of the estate" upon confirmation, they left this Court's exclusive jurisdiction and the probate court could properly consider the petition by the will beneficiary to determine the validity of deeds. As in *Chang*, the probate court proceedings occurred significantly post-confirmation and "did not violate the automatic stay, which was in force only as to property of the estate." *Chang,* 438 B.R. at 85. "Debtor[s] had the opportunity to retain the Propert[ies] in the estate until the closure of the case and decided not to select this option."

*Id.*[2] Moreover, since "[t]he automatic stay protects a debtor from the commencement or

---

[2] *See also In re Krick*, 373 B.R. at 607 n.11 ("As noted by Judge Lundin [sic], many of the consequences of re-vesting can be avoided by a confirmation order which precludes re-vesting and retains all property of the estate, as defined by 11 U.S.C. § 1306, as property of the Chapter 13 debtor's estate.") (perhaps referring to CHAPTER 13 BANKRUPTCY, ¶ 33).

-11-

continuation of actions that could have been commenced before the case was filed," and because Mr. Ronald Hornak's "claim" regarding the validity of the deeds only arose post-petition when Debtor Kenneth Hornak recorded the deeds, the PR and other beneficiaries were "not barred from commencing [the petition] in state court to" determine the validity of the deeds. *Id.* In other words, there was no violation of the stay by either the objectors or the probate court that, per the argument of the PR, needs to be equitably annulled. As a matter of law, the conveyed properties were not in the estate as of the effective date of the Debtors' plan. Consequently, when Debtors filed their proposed plan modification the automatic stay did not preclude the probate court from issuing its opinion setting aside the deeds on the basis of judicial estoppel and thereby revoking or invalidating Debtor Kenneth Hornak's interest in the properties.

For the reasons stated in this Opinion, the Court sustains the Objections of the PR and denies confirmation of the Debtors' Modified Chapter 13 Plan. Counsel for the PR is requested to prepare an appropriate Order and obtain approval of the parties or present an Order consistent with the notice of presentment rules of this Court.

**Signed on September 27, 2011**

                                            **/s/ Daniel S. Opperman**
                                       **Daniel S. Opperman**
                                       **United States Bankruptcy Judge**